IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION


- - - - - - - - - - - - - X
UNITED STATES OF AMERICA, :
                         :
      Plaintiff,         :
                         :
vs.                      :      Case No. 4:14-cr-00103
                         :
KENT LEROY SORENSON,     :      <u>PLEA HEARING TRANSCRIPT</u>
                         :
      Defendant.         :
- - - - - - - - - - - - - X


                         Courtroom, Fourth Floor
                         U.S. Courthouse
                         123 East Walnut Street
                         Des Moines, Iowa
                         Wednesday, August 27, 2014
                         9:33 a.m.


BEFORE:  THE HONORABLE CELESTE F. BREMER, Magistrate Judge.


                         -  -  -


                 KELLI M. MULCAHY, CSR, RMR, CRR
                     United States Courthouse
                 123 East Walnut Street, Room 115
                     Des Moines, Iowa 50309

APPEARANCES:

For the Plaintiff:        RICHARD CHRISTIAN PILGER, ESQ.
                          ROBERT JACK HIGDON, JR., ESQ.
                          United States Department of Justice
                          1400 New York Avenue N.W.
                          Suite 12100
                          Washington, D.C.  20005

For the Defendant:        F. MONTGOMERY BROWN, ESQ.
                          Brown & Scott, P.L.C.
                          1001 Office Park Road
                          Suite 108
                          West Des Moines, Iowa  50265

Also Present:             JOHN SARCONE, ESQ.
                          Polk County Attorney
                          Midland Savings Building
                          206 Sixth Avenue, Second Floor
                          Des Moines, Iowa  50309

1                     P R O C E E D I N G S

2          (In open court.)

3          THE COURT:  Please be seated.

4          All right.  This is Case 4:14-103.  It's United States

5  vs. Kent Sorenson.  Mr. Sorenson appears with his attorney.

6          Mr. Sorenson, I'm Judge Bremer.  I'm a magistrate

7  judge.  I can go ahead and do this plea proceeding with your

8  permission.  You've signed this consent form, as have both of

9  the attorneys, as the attorneys for the Government need to

10 consent too, so we'll go ahead and file that.

11         You're also waiving or giving up your right to have a

12 grand jury consider your case and agreeing under this plea

13 agreement to plead to a trial information, which is a charge

14 that is just filed by or signed by the attorney for the

15 Government.  Again, you've signed that waiver of indictment, and

16 I'm going to go ahead and sign that and accept it.  That then

17 allows us to go ahead and file the trial Information.

18         And who's got the original of that?

19         MR. PILGER:  I do, Your Honor.  Richard Pilger for the

20 United States.

21         THE COURT:  All right.  So if you can bring that one

22 up and file it, please.

23         I have a copy.  I would assume what you're filing is

24 the same as the copy I received.

25         MR. PILGER:  Your Honor, the advance copy may have a

4

1    typo in that the defendant's name wasn't capitalized in the last

2    line, and that's been corrected.

3              THE COURT:  All right.  And, Mr. Brown, I assume you

4    have a copy.

5              MR. BROWN:  Yes, Your Honor.

6              THE COURT:  Okay.  So we'll go ahead and file this

7    trial Information.

8              All right.  So, Mr. Sorenson, what I need to do is

9    your initial appearance and arraignment on this Information and

10   then we'll proceed into the questions that I can ask you in a

11   plea proceeding.

12             So, first of all, I'll ask if you have a copy of the

13   trial Information, and your attorney just told me that, yes, you

14   do.  Are you charged in your true and correct name and is it

15   correctly spelled, Kent Leroy Sorenson?

16             DEFENDANT SORENSON:  Yes, ma'am.

17             THE COURT:  Okay.  And you're charged in Count 1 with

18   a violation of Title 2, United States Code, Section 434(a)(1),

19   434(b)(5)(A), 437g(d)(1)(A)(i), and Title 18, Code Section 2,

20   which is willfully causing false reports of federal campaign

21   expenditures to the Federal Election Commission, and Count 2

22   charges a violation of Title 18, United States Code, Section

23   1519, falsifying records in contemplation and relation to a

24   federal investigation intending to obstruct that investigation.

25             So do you understand the basic nature of what you're

1    charged with?

2              DEFENDANT SORENSON:  Yes.

3              THE COURT:  All right.  And what are the possible

4    penalties for each count?

5              MR. PILGER:  Your Honor, the maximum penalties are as

6    follows:  For Count 1 of the Information, the maximum penalty

7    includes imprisonment up to five years, a maximum fine of

8    $250,000, costs of prosecution if applicable, and a term of

9    supervised release of three years.

10             For Count 2 the maximum penalties include up to 20

11   years' imprisonment, a maximum fine of $250,000, costs of

12   prosecution if applicable, and a term of supervised release of

13   three years.

14             For each count, a mandatory special assessment of $100

15   also applies.

16             THE COURT:  All right.  So do you understand the

17   possible penalties?

18             DEFENDANT SORENSON:  Yes, I do.

19             THE COURT:  Okay.  You have the right to have this

20   information read to you in its entirety, and do you waive that

21   right?

22             DEFENDANT SORENSON:  Yes.

23             THE COURT:  And, again, I know that we're going to

24   proceed into the plea colloquy in a minute, but just for the

25   purposes of a place marker, I'm going to enter a plea of not

1   guilty to both counts of this trial Information.

2              Is there anything else you wanted to cover in terms of

3   the initial appearance?

4              MR. PILGER:  I was advised by the U.S. Attorney's

5   Office to make sure identification was done properly and that

6   the defendant states that he is, in fact, Kent Sorenson, his

7   name is spelled correctly in the documentation.

8              THE COURT:  All right.  We covered the spelling part,

9   but are you the Kent Sorenson who is named in this trial

10  Information?

11             DEFENDANT SORENSON:  Yes, I am.

12             THE COURT:  You also have a right to have a hearing on

13  whether there are any conditions of release that reasonably

14  assure your appearance and the safety of the community.

15             It's my understanding that the Government is not

16  recommending detention and this is not a mandatory detention

17  case.  Is that right?

18             MR. PILGER:  Correct, Your Honor.

19             THE COURT:  Okay.  So what I'm going to do is enter an

20  order setting conditions of release.  This is a standard bond

21  order in this district.  It says that you'll appear whenever we

22  tell you to appear, you understand that failure to appear is a

23  separate crime with a separate fine and jail time.  You're under

24  the supervision of pretrial services.  That's Ms. Rockwell, who

25  is here somewhere in the back, she'll talk to you after this, or

1   somebody from her office.  Your travel is restricted to the

2   United States.

3           You cannot have any firearm, ammunition, destructive

4   device, or dangerous weapon, so if you're in a home where there

5   are any weapons, somebody needs to remove those.

6           You cannot have any excessive use of alcohol, any use

7   or unlawful possession of narcotics or other controlled

8   substances, unless done by a prescription.  Probation is allowed

9   to do any kind of testing or treatment or recommend any

10  treatment program for any kind of substance abuse, mental

11  health, or any other issues they think need to be addressed.

12          If you have any contact with law enforcement, you need

13  to let probation know so that they hear that from you, not from

14  them, even if it's something you think is minor, like a traffic

15  stop.  This does allow probation to visit you wherever you

16  reside.

17          There is another standard condition that says you

18  cannot harass, tamper with, improperly influence the person or

19  property of any victim, witness, juror, judicial officer,

20  informant, or anyone related to this case.  If you do, that's a

21  separate crime with a separate fine and jail time.

22          Then does he need to be processed?

23          DEPUTY MARSHAL PETERS:  Yes, ma'am, he does.

24          THE COURT:  All right.  The marshals service is

25  entitled to do some paperwork called processing, so at the end

1  of today's hearing Mr. Brown can take you to the marshals

2  service.  You also need to talk to probation and get supervision

3  set up.

4         So before you leave today, you need to sign this bond.

5  If you've got any questions about it, you need to talk to your

6  lawyer before you sign it.

7         MR. BROWN:  May it please the Court.

8         The Government and the defendant have some agreement

9  relative to the terms of release that the defendant's given a

10 reasonable time to place his firearms in a trust and/or sell

11 them.

12        THE COURT:  All right.  That's fine.

13        MR. BROWN:  Thank you.

14        THE COURT:  And, again, you just need to work with

15 probation.  It's a standard bond condition, and also, because

16 probation comes into our clients' homes, it's just a safety

17 issue for them.  As long as you've got somebody who will take

18 care of that for you, that's fine, okay, but probation will ask

19 you about it.

20        Okay.  So now we'll shift gears, and, again, I've been

21 told that you'd like to enter a plea according to a plea

22 agreement.  I have a copy of the plea agreement.  It's my job to

23 review it with you.  Even though I know you've already reviewed

24 it with your lawyer, I just get to ask you everything again.

25 It's my job to make sure you know and understand not only what

1  you're charged with and the possible penalty, you understand the

2  consequences of entering a plea, that this is voluntary and

3  knowing on your part, and that there's a factual basis for the

4  plea.

5          If at any time today you want to stop and talk to your

6  attorney or have me repeat a question, just say stop and I will.

7  Yes?

8          DEFENDANT SORENSON:  Yes.

9          THE COURT:  Okay.  So, first of all, tell me how old

10  you are.

11          DEFENDANT SORENSON:  Forty-two.

12          THE COURT:  And how far did you go in school?

13          DEFENDANT SORENSON:  High school.

14          THE COURT:  And where was that?

15          DEFENDANT SORENSON:  Indianola.

16          THE COURT:  Okay.  Oh, I'm sorry.  I forgot.  I need

17  to place you under oath, so the clerk will -- if you could

18  please stand, the clerk will place you under oath or

19  affirmation.

20          THE DEPUTY CLERK:  Please raise your right hand.

21          KENT LEROY SORENSON, DEFENDANT, SWORN

22          THE DEPUTY CLERK:  Thank you.  You may be seated.

23          THE COURT:  All right.  Thank you.

24          So, again, you're 42, you graduated from high school

25  in Iowa.  Is English your first language?

1          DEFENDANT SORENSON:  Yes.

2          THE COURT:  And you were able to read both the charge,

3   which was just filed today, the trial Information, and then the

4   plea agreement which is in three parts; is that right?

5          DEFENDANT SORENSON:  Yes.

6          THE COURT:  And you had a chance to review that with

7   your attorney, correct?

8          DEFENDANT SORENSON:  Yes.

9          THE COURT:  Okay.  And, Mr. Brown, are you appointed

10   or retained?

11          MR. BROWN:  Retained, Your Honor.

12          THE COURT:  Okay.  If at any time you ever needed

13   appointed counsel, we would give you an attorney.  And, again,

14   as part of your initial appearance, I need to remind you that

15   you do have the right to remain silent and anything you say can

16   and will be used against you.  You have the right to have

17   counsel, and if you cannot afford counsel, we would appoint an

18   attorney for you.  So, really, at any stage of the proceedings,

19   we'd appoint counsel for you.  Do you understand that?

20          DEFENDANT SORENSON:  Yes.

21          THE COURT:  Okay.

22          MR. PILGER:  Your Honor, I'm sorry to interrupt.  May

23   counsel approach?  We have an application concerning the plea

24   agreement.

25          THE COURT:  Sure.

1          (Sidebar conference off the record.)

2          THE COURT:  So you had a chance to read everything

3    that Mr. Brown wanted you to read; is that correct?

4          DEFENDANT SORENSON:  Yes.

5          THE COURT:  And, again, in cases that come in without

6    a formal discovery plan, I assume the Government's provided

7    Defendant with discovery in this case.

8          MR. PILGER:  To the extent required, Your Honor, yes.

9          THE COURT:  Okay.  All right.  And, Mr. Brown, are you

10   satisfied you've had a chance to see a sufficient record here to

11   form the basis of this plea?

12         MR. BROWN:  I have, Your Honor, from discussions with

13   the Assistant U.S. Attorney and also my own independent

14   investigation.

15         THE COURT:  All right.  And, again, you've had enough

16   chance to talk with Mr. Brown about what to do in this case and

17   you're satisfied with the outcome of this case, is that right,

18   to the extent you can be?

19         DEFENDANT SORENSON:  Yes.

20         THE COURT:  All right.  And, again, one of my jobs is

21   to make sure that you're thinking clearly and that there's

22   nothing that's interfering with your ability to think clearly so

23   I need to ask are you under the influence of any alcohol;

24   medicine, prescription medicine, over-the-counter medicine;

25   street drugs; anything that makes it hard for you to think

1  clearly today?

2          DEFENDANT SORENSON:  No.

3          THE COURT:  Do you take any prescription medicine?

4          DEFENDANT SORENSON:  No.

5          THE COURT:  And do you have any illness or any

6  condition that makes it hard for you to think clearly?

7          DEFENDANT SORENSON:  No.

8          THE COURT:  And do you have any history or treatment

9  for any mental illness or mental disorder?

10          DEFENDANT SORENSON:  No.

11          THE COURT:  And, again, you certainly have the right

12  to appointed counsel if you need appointed counsel.  You also

13  have the right to stop at any time today and talk to your

14  lawyer.

15          MR. BROWN:  One second, Your Honor.

16          (Defendant Sorenson conferred with Mr. Brown.)

17          MR. BROWN:  You may proceed, Your Honor.  Thank you.

18          THE COURT:  All right.  Thank you.

19          Now, although the Government summarized what the

20  possible penalties are, we'll just review them again and link

21  them to each count of this indictment -- or Information.  The

22  plea agreement says you're going to plead guilty to Counts 1 and

23  2 of the Information that was just filed.  There are no other

24  charges to be dismissed.  The Government says it's not going to

25  prosecute you any further out of anything that relates to the

1  charges in the trial Information.

2          The Government always has the right to prosecute you

3  if they think you are involved in some crime that's not the

4  subject of this charge.  They always can prosecute you if they

5  think you lied under oath or committed perjury.  They always can

6  prosecute you if they think you were involved in a crime of

7  violence.

8          So do you understand those terms of the plea

9  agreement?

10          DEFENDANT SORENSON:  Yes.

11          THE COURT:  All right.  So for the two charges that we

12  have, can you just walk us through the penalties again, please?

13          MR. PILGER:  Yes, Your Honor.  The maximum penalty for

14  Count 1 includes imprisonment up to five years, the maximum fine

15  of $250,000, costs of prosecution if applicable, and a term of

16  supervised release of three years, and a special assessment of

17  $100.

18          For Count 2, the maximum term of imprisonment of 20

19  years in prison, $250,000 fine, costs of prosecution if

20  applicable, and supervised release of a maximum term of three

21  years, and special assessment of $100.

22          THE COURT:  And is restitution a factor or is that

23  something that will be handled at sentencing?

24          MR. PILGER:  It will be handled at sentencing, Your

25  Honor.

1          THE COURT:  All right.  So do you understand the

2    possible penalties?

3          DEFENDANT SORENSON:  Yes.

4          THE COURT:  Okay.  Take a minute if you need to talk.

5    That's fine.

6          (Defendant Sorenson conferred with Mr. Brown.)

7          MR. PILGER:  Your Honor, if I may, just following a

8    checklist here, to be clear and for the record, the defendant's

9    statements today under oath, if false, could be prosecuted for

10   perjury.

11         THE COURT:  That's right.

12         That's why we put you under oath, okay?  So you

13   understand that; is that correct?

14         DEFENDANT SORENSON:  Yes.

15         THE COURT:  Okay.  All right.  And, again, I'm just

16   following along here in the plea agreement.  There's also a

17   provision, when we talked about no further prosecution with you

18   on charges related to this, there's a provision that the

19   Government agrees that your current spouse will not be charged

20   by the Public Integrity Section of the Criminal Division of the

21   Department of Justice with any federal crimes arising from or

22   directly related to this investigation.

23         The State, the State of Iowa, agrees that your current

24   spouse would not be charged in the state of Iowa with any state

25   or local criminal offense arising from or directly relating to

1    this investigation.

2            And, again, it's the same exceptions; except for any

3    criminal act occurring after today, any crime of violence, any

4    criminal offense that you did not fully disclose during any

5    other agreement.

6            And I would assume that she could always be charged

7    with perjury if anyone believed that she lied under oath; is

8    that right?

9            MR. PILGER:  That's right, Your Honor.  And, for the

10   record, with us today is the Polk County Attorney, Mr. John

11   Sarcone, who is a party to the plea agreement.

12           THE COURT:  All right.  And, again, that's not a

13   typical provision, and typically we're only concerned with the

14   person who is directly in front of me, but that is one of the

15   provisions of this plea agreement, so do you understand that?

16           DEFENDANT SORENSON:  Yes.

17           THE COURT:  Okay.  We've talked about the possible

18   penalties.  If you are sentenced to any term in prison and then

19   you're released from prison you're under the supervision of our

20   probation office.  That's called supervised release.  If you

21   violate a condition of supervised release, that can be revoked

22   and you can be sent back to prison for up to four years and you

23   would not get credit for time served.  Do you understand that?

24           DEFENDANT SORENSON:  Yes.

25           THE COURT:  We've talked about the fact that you will

1  not be detained, you'll be released on your promise to appear,

2  and so we'll just need to get you to sign that bond order and

3  talk to probation before you leave, all right?

4          So what would the Government have to prove?  In any

5  criminal case the Government always has the burden of proof to

6  show each and every element beyond a reasonable doubt, so what

7  would the Government have to prove here on each count?

8          MR. PILGER:  Your Honor, as to Count 1, the Government

9  would be required to prove beyond a reasonable doubt that the

10 defendant caused false reports to the Federal Election

11 Commission of expenditures by an authorized campaign committee

12 of a federal candidate.

13         It would further be required to prove that the false

14 reporting of expenditures aggregated $25,000 or more in a

15 calendar year and would third be required to prove that the

16 defendant acted willfully, that is, knowing that the conduct was

17 unlawful.

18         Do you wish me to proceed to Count 2?

19         THE COURT:  Well, first I'll ask do you understand

20 what the Government would have to prove here in Count 1 of this

21 trial Information?

22         DEFENDANT SORENSON:  Yes.

23         THE COURT:  All right.  And then as to Count 2, what

24 would you have to prove?

25         MR. PILGER:  Your Honor, as to Count 2, the Government

1    would be required to prove beyond a reasonable doubt that the

2    defendant knowingly falsified a document, record, or tangible

3    object; second, the defendant did so with the intent to impede,

4    obstruct, or influence and in contemplation of or in relation to

5    a matter; and, third, that the matter was within the

6    jurisdiction of the Federal Bureau of Investigation or the

7    Federal Election Commission, which are departments or agencies

8    of the United States.

9            THE COURT:  All right.  And so do you understand what

10   the elements are for Count 2?

11           DEFENDANT SORENSON:  Yes.

12           THE COURT:  All right.  And, again, the Government has

13   the burden of proof to show each element beyond a reasonable

14   doubt on each count.  We talked about the possible penalties.

15           Now, you have the right to have the Government prove

16   its case at trial.  That's a jury trial.  It would be a jury of

17   12 people from the community.  You would know who they were

18   because your attorney could ask them questions to make sure they

19   were qualified to serve.

20           Everything happens in public.  You have the

21   presumption of innocence, and you have the right to have a

22   speedy trial.  The Government has to put on the witnesses and

23   the evidence.  Your attorney has the ability to cross-examine

24   those witnesses, and this, again, all happens in front of you.

25           If you wanted to testify, you could, but you don't

1  have to.  That's your right against self-incrimination.  If you

2  wanted people to come in here and testify, we'd issue subpoenas

3  or orders and tell people to come in here and testify.

4         So it wouldn't be until all of the evidence was in

5  that the judge would tell the jury what the law was or what

6  those elements were on each count.  The attorneys would argue

7  about whether the facts of this case met those legal

8  requirements.

9         The jury would have to go deliberate.  They could not

10  return a guilty verdict on either count unless they found

11  unanimously that the Government had met its burden of proof on

12  each and every element for each count separately.

13         And then you'd have certain rights to appeal, and

14  those are rights that relate to everything that happened in the

15  trial and before the trial.

16         So if you enter a plea, you're waiving or giving up

17  all those rights and there is no trial in this case and the next

18  thing that happens is sentencing.  Do you understand that?

19         DEFENDANT SORENSON:  Yes.

20         THE COURT:  You also have no right to withdraw your

21  plea.  Do you understand that?

22         DEFENDANT SORENSON:  Yes.

23         THE COURT:  And sentencing is a whole separate event

24  by a whole different judge, and in this case it's Judge Pratt.

25  We'll order a presentence investigation, and that will be

1  completed by probation.  That will also include a financial

2  statement, and part of the plea agreement is you'll cooperate

3  with the presentence.

4       So at the time of sentencing, you always have the

5  right to talk directly to the sentencing judge, again, who is

6  not me and I don't have anything to do with sentencing.  You

7  have the right to have your attorney say anything you want to

8  make sure gets said at sentencing.  You can even put on evidence

9  or testimony at the time of sentencing.

10      And so sentencing, again, is a whole separate event,

11 but if this plea is accepted based on my report and

12 recommendation, then you do not have the right to withdraw your

13 plea.

14      The plea agreement also says the Government's

15 understanding of your criminal history is a couple of

16 misdemeanors but that if during the course of the presentence

17 more significant criminal history was discovered, then the

18 Government has the right to withdraw from the plea agreement.

19 Do you understand that?

20      DEFENDANT SORENSON:  Yes.

21      THE COURT:  The plea agreement --

22      MR. BROWN:  One second, Your Honor.  Thank you.

23      (Defendant Sorenson conferred with Mr. Brown.)

24      MR. BROWN:  We may proceed, Your Honor.  Thank you.

25      THE COURT:  All right.  Thank you.

1          At the time of sentencing the sentencing judge will

2     look at the nature of the offense, the offenses to which you're

3     pleading guilty; any amount of money involved; any obstruction

4     of justice in the investigation or prosecution of the offense;

5     and your acceptance or lack of acceptance of responsibility.

6          The judge starts the sentencing, and everyone does,

7     with a review of the United States Sentencing Commission

8     Guidelines.  We actually use a current copy, and that starts the

9     framework to talk about sentencing.

10          And so it's totally appropriate that you and your

11    attorney and the attorney for the Government talk about

12    sentencing, but what's important for me to know is that you

13    understand nobody here is making any promises to what the

14    sentence will actually be.  Do you understand that?

15          DEFENDANT SORENSON:  Yes.

16          THE COURT:  And, again, under the guidelines there are

17    certain sentencing ranges that are suggested.  The Government

18    here agrees to recommend that you get credit for acceptance of

19    responsibility, which is what would happen for anybody who comes

20    forward to plead, and so here if the base offense level is 16 or

21    above, I have no idea if it is, the Government says it will

22    agree that you get a three-level reduction based on your timely

23    notification of your intent to plead.

24          But, again, that's all part of the work that will be

25    included in the presentence report because probation starts to

1  do that calculation and then you get a chance to see what's in

2  the presentence.  And you'll get a chance to file any objections

3  or corrections or additions, as will the attorney for the

4  Government, so that's a process that's going to be ongoing.

5         We're going to do a separate order that sets the

6  deadlines for completion of the presentence investigation, and

7  then usually after the completion there's a week or so before

8  the objections are due, and then after that, then after

9  probation is satisfied that the presentence investigation is

10 complete, then a sentencing date will be set on Judge Pratt's

11 calendar.

12        We don't set those in advance on his calendar so I

13 can't tell you when the sentencing date is.  In other cases I've

14 been doing this month, they've been November and December dates,

15 but we need to let probation have time to get its work done.

16        So, again, part of your supervision will be

17 cooperating with them and getting the presentence completed.

18        MR. PILGER:  Your Honor, if I may.

19        THE COURT:  Yes.

20        MR. PILGER:  There's one wrinkle in the acceptance of

21 responsibility.  So we'll stand by our agreement, but it's been

22 made clear that there is adverse case law in this circuit which

23 may prevent the Court from applying acceptance of

24 responsibility.  We've discussed that with counsel, who

25 understands it, but it might be a good idea to make it clear the

22

1  defendant understands that as well.  And the problem is he's

2  pleading to obstruction of justice, which may prevent the

3  Court --

4       THE COURT:  Which certainly is a factor on whether you

5  decide to give credit for acceptance or lack of acceptance of

6  responsibility.  The provision here that's in the plea agreement

7  is that somewhat standard provision, but usually someone's not

8  charged like you are in Count 2.

9       And so again, Mr. Brown, are you confident that your

10  client understands that although the Government might make this

11  motion, again, it's a motion and the sentencing judge doesn't

12  have to or may not be able to allow for that downward departure?

13       MR. BROWN:  Yeah, I believe the defendant does

14  understand that ultimately the sentencing judge makes

15  determination as to applicable guideline range, including the

16  acceptance of responsibility factors.

17       THE COURT:  All right.  And, again, you know, the

18  decision, first of all, to make the motion is on the Government,

19  but, second of all, it's the sentencing judge who has to figure

20  out what to do with that and what the case law allows him to do.

21  And so as the attorney for the Government pointed out, in this

22  circuit, there may be some brackets or limits on what a judge

23  can do even with the request, so do you understand that?

24       MR. BROWN:  One minute, Your Honor.

25       (Defendant Sorenson conferred with Mr. Brown.)

1          MR. BROWN:  We may proceed, Your Honor.  Thank you.

2          THE COURT:  Sure.  Thank you.

3          And, again, you know, the United States Sentencing

4   Commission Guidelines are complicated enough in uncomplicated

5   cases, and we don't expect you to know and understand them or

6   all the nuances.

7          For the purpose of plea, what's important to me is

8   that you understand what the maximum possible penalty is here

9   and the fact that no one's promised you any different sentence.

10  So do you understand the maximum possible penalty on each count

11  in this case?

12         DEFENDANT SORENSON:  Yes.

13         THE COURT:  And I understand that your attorney's

14  going to work really hard to have a different outcome than the

15  maximum possible penalty, but that's, again, up to the

16  sentencing judge and that's a whole separate event, so do you

17  understand that?

18         DEFENDANT SORENSON:  Yes.

19         THE COURT:  Go ahead.

20         MR. BROWN:  One minute, Your Honor.  Thank you.

21         (Defendant Sorenson conferred with Mr. Brown.)

22         MR. BROWN:  We may proceed, Your Honor.  Just at some

23  point in time we may inquire as to what we, the parties, think

24  that the advisory guideline range may be in this matter.

25         THE COURT:  Again, what you think they are or what

1    probation thinks they are or what the sentencing judge thinks

2    they are are still open questions in my mind, but if you want to

3    enlighten us on what you think they are, that's great.

4           MR. BROWN:  Your Honor, if acceptance of

5    responsibility points are granted, including the third point,

6    it's our estimate that the range would be approximately 18 to 24

7    months.  I think the Government thinks it's a little higher than

8    that.

9           THE COURT:  And if it's not applied, if acceptance of

10   responsibility is not applied, what's the range?

11          MR. BROWN:  36 to 48.

12          THE COURT:  Okay.

13          MR. PILGER:  Your Honor, the Government would

14   respectfully request to put off taking a position on the

15   sentencing guidelines until after the presentence report.  We've

16   had our discussions with counsel, and his estimate is his

17   estimate.

18          THE COURT:  Okay.  And, again, Mr. Sorenson, even if I

19   had an estimate, which I don't, it just doesn't matter because

20   none of us is the sentencing judge and the sentencing judge

21   isn't here and this plea agreement does not bind the sentencing

22   judge to any particular sentence.  So do you understand that?

23          DEFENDANT SORENSON:  Yes.

24          THE COURT:  All right.  And, again, I think it's

25   important and I think it's part of your lawyer's job to do the

1   calculation and to think it through and also to talk to opposing

2   counsel and get their thoughts on it, but there's certainly no

3   requirement that the attorneys agree or each side agrees, and

4   that's why the sentencing hearing is a whole separate hearing

5   and it's a contested hearing.  Do you understand that?

6           DEFENDANT SORENSON:  Yes.

7           THE COURT:  All right.

8           MR. BROWN:  One minute, Your Honor.

9           (Defendant Sorenson conferred with Mr. Brown.)

10          MR. BROWN:  We may proceed, Your Honor.  Thank you.

11          THE COURT:  All right.  I have received some dates for

12   completion of the presentence, and so it will be completed by

13   October 13th.  Objections will be filed by October 27th, and

14   then by November 3rd probation will let Judge Pratt know that

15   the case is ready to put on the docket for sentencing.  And so

16   after the completion of the presentence and any objection

17   meeting, then you'll get a sentencing date, so it will be

18   sometime after November 3rd.

19          And I guess since we've woven the State in here, are

20   there any state charges pending?

21          MR. SARCONE:  No, Your Honor.

22          THE COURT:  All right.  Now, we talked about the

23   possibility of restitution, and, again, that's a factor that the

24   sentencing judge has to look at.  That will be considered in the

25   presentence investigation.  Part of the presentence will be a

1    financial statement.

2            This particular plea agreement makes it clear that if

3    restitution is ordered that's a payment plan that is set up

4    under the criminal side of a case.  That doesn't restrict any

5    part of the defendant which would be -- any Government agency or

6    any victim from using other means to try to collect any money

7    they think is due and owing if they have a judgment against you.

8            So any financial arrangements that you're making

9    payments through the criminal case doesn't protect you from

10   anyone trying to collect under the Federal Debt Collections Act

11   or any kind of offset program, or any victim, anyone who is not

12   a party to this agreement, may pursue their own thoughts about

13   loss.

14           On page 8 it also says this plea agreement is limited

15   to the Public Integrity Section of the Criminal Division of the

16   United States Department of Justice and the State of Iowa, and

17   they cannot bind any other federal, state or local prosecuting,

18   administrative or regulatory authorities.  So if there's some

19   other administrative action or other consequences relating to

20   the financial piece of this, this case is only going to talk

21   about whatever the finances are that relate to these two

22   charges, and that's what probation is going to order in terms of

23   the presentence investigation.

24           Is that an accurate summary of what our perspective is

25   on the financial piece?

1          MR. PILGER:  Yes, Your Honor.

2          MR. BROWN:  Your Honor, it's our position that whether

3   restitution is granted is a legal question for the judge.  It

4   would be our position that society is the victim and Political

5   Campaign No. 2 is not a victim under the restitution statute.

6          THE COURT:  All right.  But, again, it's another issue

7   for another day, and it's just my job to make sure you know that

8   issue is out there and so there could be some more legal work or

9   legal issues that you would be exposed to that aren't handled or

10  settled by this plea agreement, and do you understand that?

11         MR. BROWN:  One minute, Your Honor.

12         (Defendant Sorenson conferred with Mr. Brown.)

13         DEFENDANT SORENSON:  Yes, I understand that.

14         THE COURT:  All right.  Part of the plea agreement is

15  that you waive or give up your right to appeal your conviction

16  in this case.  That would waive any motions, defenses or

17  objections you could assert to the charges or the entry of

18  judgment against you, and so that's the part or the entry of a

19  finding of guilt.

20         You and the Government reserve the right to appeal any

21  sentence imposed to the extent that kind of appeal is

22  authorized.  You're also waiving or giving up your rights to

23  what's called post-conviction proceedings, another way to

24  challenge the conviction.

25         And so there's the direct appeal and then there's this

1  collateral motion or post-conviction motion or habeas corpus.

2  You always have the right to have post-conviction relief if you

3  say you have ineffective assistance of counsel or that there is

4  prosecutorial misconduct and that either or both of those things

5  happened before today and they happened in such a way you

6  couldn't know about it so that today's procedure should be void.

7          That's a really hard standard to make, so, really,

8  you're giving up the right to challenge your conviction on both

9  of these counts, and do you understand that?

10          DEFENDANT SORENSON:  Yes.

11          THE COURT:  Okay.  Now, again, the question is is this

12  voluntary, so you had a full opportunity to discuss this with

13  your attorney; is that right?

14          DEFENDANT SORENSON:  Yes.

15          THE COURT:  And no one has made any threats or

16  promises in order to get you to plead guilty, other than what's

17  contained here in the plea agreement; is that right?

18          DEFENDANT SORENSON:  Yeah.  Yes.

19          THE COURT:  Okay.  And, again, you've had enough time

20  to talk with your lawyer about what to do; is that right?

21          DEFENDANT SORENSON:  Yes.

22          THE COURT:  And on page 11 of the plea agreement

23  there's a paragraph right before there.  Is this your signature

24  here in the middle of the page on page 11?

25          DEFENDANT SORENSON:  Yes.

1      THE COURT:  Okay.  And so it says that you've read the

2  plea agreement, you've talked it over with your lawyer, you're

3  entering a plea voluntarily and of your own free will, there's

4  no side promises other than what's in the plea agreement, you've

5  not been threatened, and you're satisfied with the services of

6  your attorney and, again, you've had enough chance to talk to

7  your attorney both today and before today, and that entering

8  this plea agreement is voluntary.  Is that right?

9      DEFENDANT SORENSON:  Yes.

10     THE COURT:  Now, part of my job is to make sure that

11 there's a factual basis for the plea agreement, and so if the

12 Government wants to do the colloquy on that or somehow

13 summarize.  Usually we don't go through every single fact, we

14 just go through enough to get the essential elements.

15     MR. PILGER:  Yes, Your Honor.  So for the record, the

16 factual basis in its entirety is included in Attachment A to the

17 plea agreement which is before Your Honor.  I'll summarize that

18 now.

19     THE COURT:  And we're asking Mr. Sorenson if you agree

20 or stipulate to these facts.

21     And, again, we ask you this while you're under oath,

22 all right?

23     So go ahead.

24     MR. PILGER:  So, Your Honor, the factual stipulation

25 would be that there is a law called the Federal Election

1   Campaign Act of 1971, which I'll call the Election Act.  The

2   Election Act required that the authorized committee of the

3   candidate for President of the United States must make reports

4   to the Federal Election Commission or the FEC.

5           The Election Act required that the authorized

6   committee of the candidate for President of the United States

7   report any expenditure by the committee over $200 within a

8   calendar year that the committee made to meet a candidate or

9   committee operating expense, together with the date, amount, and

10  purpose of such operating expense.  The FEC in turn, under the

11  law, reports this information to the public.

12          The FEC is an agency and department of the United

13  States with jurisdiction to enforce the Election Act.  The FBI

14  is also an agency and department of the United States with

15  jurisdiction to investigate criminal violations of the Election

16  Act.

17          At relevant times Political Committee 1 was the

18  authorized political committee registered with the FEC as

19  accepting contributions and making expenditures to further the

20  nomination and election of Candidate A to the office of

21  President during the 2012 federal race.

22          Political Committee 2 was the authorized political

23  committee registered with the FEC to accept contributions and

24  make expenditures to further the nomination and election of

25  Candidate B for President of the United States during the 2012

1  elections.

2          Political Committee 3 was a political action committee

3  affiliated with the first candidate, Candidate A, and it was

4  allowed to make up to $5,000 in contributions to authorized

5  committees of other federal candidates -- or of federal

6  candidates, I should say.

7          Then from in or about March 2011 to in or about

8  December 2011, the defendant publicly worked for the election of

9  Candidate A to the office of President in exchange for $7,000 to

10 $7,500 per month, which first came from Political Committee 3

11 and later from Political Committee 1, and in each instance

12 passed through a political consulting company and Company Z, so

13 two different companies.

14         Then, Your Honor, while the defendant was working for

15 the campaign of Candidate 1, representatives of Candidate 2 were

16 attempting to persuade him to switch allegiance to Candidate 2.

17 From on or about October 29th, 2011, until on or about December

18 26th, 2011, the defendant or his representatives secretly

19 negotiated directly and indirectly with agents of Political

20 Committee 2 to switch his support to Candidate B in exchange for

21 secret payments.

22         On or about December 26th, 2011, the defendant met

23 with Political Operative D, an agent of Candidate 2 and

24 Political Committee B at a restaurant in Altoona.  Political

25 Operative D then and there gave the defendant, through the

1  defendant's spouse, a check for $25,000 in return for the

2  defendant's public support and work for Candidate B, which check

3  was drawn on the account of Company X which was in turn owned by

4  the spouse of Political Operative D.

5       The defendant accepted and held the check rather than

6  cashing it, initially because he was undecided on switching

7  campaigns, and later the check served as concealed security

8  against the loss of anticipated payments for two months of work

9  for Candidate A and as a concealed security for future concealed

10 payments of approximately $8,000 per month from Candidate B.

11      On or about December 28th, 2011, at a political event

12 in Des Moines, Iowa, Defendant publicly announced his change of

13 support and work from Candidate A to Candidate B.  At or about

14 the time of the defendant's switch to supporting Candidate B,

15 Political Operative D and the defendant agreed that Political

16 Committee 2 would secretly pay the defendant approximately

17 $8,000 per month from in or about January to in or about July

18 2012, and Political Committee 2 did thereafter, through the

19 actions of Political Operative D and others, pay the defendant

20 approximately $8,000 per month, totaling at least $73,000 in

21 calendar year 2012, and each payment was concealed from the FEC

22 and from the public by transmittal through first Film Production

23 Company W, which was not affiliated with any federal candidate

24 or committee and which did no work for federal candidates or

25 committees, and then second through Company Z, and then finally

1  to the defendant and his spouse.

2          On or about December 29th, 2011, in response to

3  criticism of his switch to supporting Candidate B and working

4  for Candidate B and in an effort to conceal the payments to

5  compensate him for that switch, the defendant gave interviews to

6  the media denying allegations that Mr. Sorenson was receiving

7  any money in return for his support of Candidate B and noting

8  that reports to be filed by Political Committee 2 with the FEC

9  would show that Political Committee 2 made no payments to the

10  defendant.

11          Political Committee 2 did, in fact, file regular

12  reports with the FEC during calendar year 2012.  Those reports

13  omitted any reference to the agreed expenditures of

14  approximately $73,000 to the defendant other than the concealing

15  payments to Film Production Company W.  The defendant knew that

16  agents of Political Committee 2 would and did falsely omit his

17  name and other identifying information from required reports to

18  the FEC.

19          One of the reasons that the defendant did not want

20  payment to him from Political Committees 1 or 2 disclosed to the

21  FEC and then by the FEC to the public was because of possible

22  interpretation of Iowa Senate ethics rules prohibiting sitting

23  senators such as himself from accepting payment from a political

24  campaign.

25          And on or about January 28th, 2013, a former employee

1  of Political Committee 1 filed a complaint against the

2  defendant, who was then a sitting senator in the Iowa State

3  Senate, filed a complaint with the Iowa Senate Ethics Committee,

4  and on or about May 1st, 2013, the committee asked the Chief

5  Justice of the Iowa Supreme Court to appoint independent counsel

6  to investigate some of the allegations in that complaint.

7  Subsequently, an independent counsel was appointed.  That was an

8  independent counsel to the Iowa Senate Ethics Committee.

9          On or about February 18th, 2013, a complaint was also

10  filed with the Federal Election Commission alleging violations

11  of federal campaign finance laws regarding the payments to the

12  defendant by Political Committees 1 and 2.

13          On or about September 19th, 2013, the independent

14  counsel to the Iowa Senate Ethics Committee took a sworn,

15  transcribed and videotaped deposition from the defendant.  The

16  defendant then and there contemplated that both the FEC and the

17  FBI were investigating the legality of the payments he received

18  from Political Committees 1 and 2.

19          During the deposition, the independent counsel asked

20  the defendant numerous questions about any money that the

21  defendant received from either Political Committee 1 or

22  Political Committee 2, and the defendant specifically and

23  falsely denied being paid by either political committee in

24  return for his endorsements of the respective candidates or for

25  his work on their behalf.

1          He further falsely described the entities used to

2    conceal the payments to him, including falsely characterizing

3    Film Production Company W as a political consulting firm that

4    was seeking assistance from Sorenson -- from the defendant in

5    scouting shooting locations in the state of Iowa and also as

6    assisting the defendant in potentially seeking higher office.

7          Your Honor, the defendant took all the actions

8    described above willfully and knowingly, and that means with a

9    specific intent to violate the law or knowing that they were

10   unlawful.

11         That concludes the summary of the facts, Your Honor.

12         THE COURT:  All right.  And, Mr. Sorenson, you've

13   reviewed this statement and stipulation as to facts, and, in

14   fact, you signed that at the end of it; is that right?

15         DEFENDANT SORENSON:  Yes.

16         THE COURT:  And do you stipulate to these facts, that

17   you willfully caused a campaign committee for a candidate of the

18   office of President of the United States to falsely report to

19   the Federal Election Commission disbursements of money to this

20   film company that were, in fact, disbursements to you

21   aggregating $25,000 or more in the calendar year 2012?  Do you

22   admit that?

23         DEFENDANT SORENSON:  Pardon me?

24         THE COURT:  Do you admit the facts --

25         DEFENDANT SORENSON:  Yes.

1          THE COURT:  -- that are alleged in Count 1 of the

2    Information?

3          DEFENDANT SORENSON:  Yes.

4          THE COURT:  Okay.  And, again, do you admit that as

5    part of the investigation during September of 2013 you took

6    steps to impede, obstruct, or somehow interfere with the

7    investigation and proper administration of matters within the

8    jurisdiction of agencies of the United States or the State?

9          DEFENDANT SORENSON:  Yes.

10          MR. BROWN:  We agree, Your Honor, that the deposition

11    taken by the independent counsel was a false record for purposes

12    of the statute.

13          THE COURT:  All right.  There's an additional segment

14    to this plea agreement.  It's accepted under seal.  Typically

15    it's not reviewed, but I need to know that you understand that

16    there is a full and complete plea agreement that you've signed

17    and you agree to abide by all the conditions of that plea

18    agreement --

19          DEFENDANT SORENSON:  Yes.

20          THE COURT:  -- and is that true?

21          And, again, you've had a chance to review everything

22    with your lawyer, think through what it means to you, and,

23    again, remembering that the issue of sentencing is a whole issue

24    for another day by a different judge, so you understand that?

25          DEFENDANT SORENSON:  Yes.

1          THE COURT:  And if I neglected to mention it earlier,

2    one of the terms of sentencing is a mandatory $100 special

3    assessment to the crime victims fund on each count.  It

4    typically would be expected that that would be paid before

5    sentencing, and, again, part of a presentence will be a

6    financial statement, and the Court will know if you can make

7    arrangements to get that done.

8          Do you want to make any additional record as far as

9    all the terms of the plea agreement?

10          MR. PILGER:  Your Honor, for the Government,

11    unfortunately, we've noticed there are typos in the Attachment

12    A.  We would like to correct those, initial them, and submit

13    them to the Court here this morning.  We regret any delay that

14    causes.

15          THE COURT:  All right.  Well, we'll just let you take

16    care of that before you leave today.  I'm assuming they don't

17    materially affect the admissions that Defendant just made.

18    Right?

19          MR. PILGER:  Nothing material, Your Honor, correct.

20    For the record, the typos relate to designating the political

21    committees and the candidates by numbers and letters and making

22    sure that that's consistent throughout.

23          MR. BROWN:  We have nothing further, Your Honor.

24    Thank you.

25          THE COURT:  All right.  So, Mr. Sorenson, I'll ask

1  you, thinking about all the rights you have and all the rights

2  you're giving up, everything that we've just talked about during

3  today's proceeding, all the information you have from your

4  attorney and the time you've had to talk with him about what to

5  do, how do you plead to each count of this information?

6           And I'll first ask, how do you plead to Count 1,

7  which --

8           DEFENDANT SORENSON:  Guilty.

9           THE COURT:  Okay.  And that's willfully causing false

10 reports of federal campaign expenditures to the Federal Election

11 Commission.  You plead guilty to that?

12          DEFENDANT SORENSON:  Yes.

13          THE COURT:  Okay.  And how do you plead to Count 2,

14 which is falsifying records in contemplation and relation to a

15 federal investigation intending to obstruct that investigation,

16 guilty or not guilty?

17          DEFENDANT SORENSON:  Guilty.

18          THE COURT:  I'm going to do a report and

19 recommendation that these pleas be accepted.  I find that they

20 are knowing and voluntarily made.  There is a factual basis as

21 far as each and every element as to each count of this trial

22 Information.  Defendant knows and understands the terms of the

23 plea agreement and agrees to be bound by them.

24          There will be a presentence report that will be

25 completed under the schedule that's previously been set.

39

1   Defendant is released on his promise to appear.

2           You need to sign the bond and talk to probation.  You

3   also need then to talk to the marshals service and take care of

4   processing.

5           Then I'd ask counsel if you could please clean up that

6   part of the plea agreement and give it to the clerk before you

7   leave so that we're not, you know, tracking you down later,

8   okay?

9           Is there anything else we need to do?

10          MR. PILGER:  Not from the Government, Your Honor.

11          MR. BROWN:  No, Your Honor.  Thank you.

12          THE COURT:  All right.  Thank you.

13          (Proceedings concluded at 10:25 a.m.)

14

15

16

17

18

19

20

21

22

23

24

25

40

1                    C E R T I F I C A T E

2          I, Kelli M. Mulcahy, a Certified Shorthand Reporter of

3   the State of Iowa and Federal Official Realtime Court Reporter

4   in and for the United States District Court for the Southern

5   District of Iowa, do hereby certify, pursuant to Title 28,

6   United States Code, Section 753, that the foregoing is a true

7   and correct transcript of the stenographically reported

8   proceedings held in the above-entitled matter and that the

9   transcript page format is in conformance with the regulations of

10  the Judicial Conference of the United States.

11          Dated at Des Moines, Iowa, this 16th day of October,

12  2014.

13

14

15                    /s/ Kelli M. Mulcahy
                      Kelli M. Mulcahy, CSR No. 941, RMR, CRR
16                    Federal Official Court Reporter

17

18

19

20

21

22

23

24

25